UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JACQUELINE BURGESS,

    Plaintiff,

v.                                           Case No. 8:23-cv-290-AEP

MARTIN O'MALLEY,
Commissioner of Social Security,[1]

    Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claim for Supplemental Security Income ("SSI") and disability insurance benefits ("DIB"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

**A.  Procedural Background**

Plaintiff filed an application for DIB on April 1, 2019, and SSI on April 9, 2019. (Tr. 505-14). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration. (Tr. 131-56, 157-90, 231-36, 239-64). Plaintiff then requested an administrative hearing. (Tr. 265-66). Per Plaintiff's

---

[1] Martin O'Malley is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Martin O'Malley should be substituted for Acting Commissioner Kilolo Kijakazi as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 89-113). Following the hearing, the ALJ issued an unfavorable decision, finding Plaintiff not disabled and denying Plaintiff's claims for benefits. (Tr. 200-22). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council granted. (Tr. 223-226). The Appeals Council vacated the ALJ's decision and remanded the case back to the ALJ for further review. (Tr. 223-226). The ALJ held subsequent hearings on April 26, 2022, and August 16, 2022. (Tr. 63-88, 38-62). On September 15, 2022, the ALJ issued a decision finding that Plaintiff was not disabled on her alleged onset date, March 29, 2019, through June 30, 2020, the date last insured. (Tr. 13-37). Accordingly, Plaintiff was not eligible for DIB. (Tr. 25). However, due to a change in Plaintiff's age categorization in the interim, the ALJ found Plaintiff disabled as of January 19, 2022, and was thus entitled to SSI. (Tr. 25). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1-8). Plaintiff then timely filed a complaint with this Court. (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B.  Factual Background and the ALJ's Decision

Plaintiff was born in 1967 and began claiming disability on December 6, 2018 (Tr. 505). Plaintiff obtained a twelfth-grade education. (Tr. 553). Her past relevant work experience included work as a housekeeper and prep cook. (Tr. 553). Plaintiff alleged disability due to arthritis in her knees, hypertension, a torn ligament in her right shoulder, back problems, and generalized anxiety. (Tr. 552).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through June 30, 2020, and had not engaged in substantial gainful activity since December 6, 2018, the alleged onset date. (Tr. 15). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: osteoarthritis of right knee status post knee replacement, status post torn rotator cuff, diabetes mellitus, morbid obesity, and anxiety disorder. (Tr. 16). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform "light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can frequently climb ramps and stairs but not more than occasionally climb ladders, ropes, or scaffolds. The claimant can understand, remember, carry out, and exercise judgement for simple tasks." (Tr. 17). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence. (Tr. 18).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform her past

relevant work. (Tr. 22). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a housekeeper, cafeteria attendant, and marker. (Tr. 24). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled prior to January 19, 2022. (Tr. 24). However, beginning January 19, 2022, Plaintiff's age category changed. (Tr. 24). Therefore, when taking into consideration Plaintiff's new age categorization, education, work experience, and RFC and applying Medical-Vocational Rule 202.06, the ALJ found that no jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 24).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation

process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The ALJ, in part, decides Plaintiff's claim pursuant to regulations designed to incorporate vocational factors into the consideration of disability claims. *See* 20 C.F.R. §§ 404.1501, *et seq.* These regulations apply in cases where an individual's medical condition is severe enough to prevent him from returning to his former employment but may not be severe enough to prevent him from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in

determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the regulations and are commonly referred to as "the grids." 20 C.F.R. Part 404, Subpart P, App. 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. 20 C.F.R. §§ 404.1569, 416.969. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability but is advisory only. 20 C.F.R. §§ 404.1569a, 416.969a.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal

analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam) (citations omitted).

## III.

Plaintiff argues that the ALJ erred in failing to fully and fairly develop the record before determining the Plaintiff was not disabled prior to January 19, 2022. For the following reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

In her brief, Plaintiff argues that the ALJ errored in relying on outdated medical opinion evidence to find that Plaintiff could perform light work. Specifically, Plaintiff cites to the fact the state agency opinion the ALJ found to be "generally persuasive" was made by an obstetrician in 2019, roughly three years before the ALJ's determination as well as the ALJ's reliance on medical records from 2020. (Doc. 21, p. 4-5). Plaintiff further maintains that given the minimal treatment records provided to the ALJ prior to Plaintiff's knee replacement surgery in 2022, the ALJ should have sought a medical opinion to fully and fairly develop the record as "common sense dictates that a person does not go from being able to stand and walk six hours out of an eight-hour workday, to having a total knee replacement the next day." (Doc. 21, p. 5).

Plaintiff is misguided in her argument. Social Security courts are inquisitorial rather than adversarial in nature. Consequently, though claimants are responsible for establishing their eligibility for benefits through a showing of disability, the ALJ is charged with developing a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *see also* 20 C.F.R. § 416.912(b) (stating that "[b]efore we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application"). However, this responsibility does not absolve Plaintiff of her burden to produce evidence demonstrating her alleged disability. 20 C.F.R. § 416.912(a) (stating that it is the claimant's responsibility "to prove to us that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled.").

Furthermore, an ALJ is not required to order a consultive examination when the record contains sufficient evidence for the ALJ to make an informed decision. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). Finally, a court will remand for failure to develop record only where "the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Mosley v. Acting Com'r of Soc. Sec. Admin.*, 633 F. App'x 739 (11th Cir. 2015) (quoting *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir.1995)). Here, the record as a whole is neither incomplete nor inadequate but rather contains sufficient information from which the ALJ could evaluate Plaintiff's alleged disability and determine her RFC.

Plaintiff maintains that she is unable to perform regular and consistent work due to her alleged impairments which include: arthritis in her knees, hypertension, a torn ligament in her right shoulder, back problems, and generalized anxiety. In evaluating Plaintiff's RFC, the ALJ properly reviewed medical records dating from 2011-2022, assessed Plaintiff's subjective testimony, and evaluated the administrative medical findings by the State agency medical consultants. (Tr. 13-37). Of specific note to the ALJ were Plaintiff's medical records from Gracepoint Wellness Center, Tampa Family Health, Charles Lebowitz, M.D., Lawrence N. Pasman, Ph.D, and the state agency consultants. (Tr. 17-22).

With respect to Plaintiff's alleged mental impairments, the ALJ noted that around Plaintiff's alleged onset date she presented to Gracepoint Wellness Center seeking treatment for anxiety at which time she reported getting along well with others and was found to have "good insight and judgment." (Tr. 18) The ALJ then referenced and evaluated several follow up appointments Plaintiff had at Gracepoint Wellness Center in July 2018, July 2019, January 2020, and March 2020 as well as an neuroachievement consultative examination with Lawrence N. Pasman, Ph.D in August 2019. (Tr. 18-21). Based on this evidence, the ALJ surmised that while Plaintiff "may experience some depression and anxiety, her treatment has been routine and conservative in nature." (Tr. 21). Despite Plaintiff's conservative treatment, the ALJ chose to limit Plaintiff to a range of light unskilled work based on her subjective allegations concerned her mental impairments. (Tr. 22). Notably, these restrictions were greater than those advised by the State agency

9

psychologists whose opinions the ALJ found to unpersuasive as the agency psychologists did not have the opportunity to review Plaintiff's updated medical records which the ALJ found supported greater restrictions. (Tr. 22)

With respect to Plaintiff's alleged physical impairments, the ALJ acknowledged that in November 2018 Plaintiff presented to the emergency room complaining of right knee pain which worsened with walking where she underwent an examination and x-rays. (Tr. 19). The ALJ noted that Plaintiff's examination revealed a normal range of motion with tenderness over her knee joint while her x-rays showed prominent tricompartmental osteoarthritic changes in her right knee involving the patellofemoral compartment. (Tr. 19-20). The ALJ contrasted this evidence with Plaintiff's visits to Tampa Family Health in March 2019 and April 2019 during which Plaintiff reported no physical impairments or complaints. (Tr. 20).

In August 2019, Plaintiff presented to Charles Lebowitz, M.D. with complaints of bilateral knee pain. (Tr. 1008-1015). However, as acknowledged by the ALJ, the examination did not reveal any evidence of peripheral edema, cyanosis, clubbing, or joint swelling of the extremities and joints. (Tr. 19, 1010). The ALJ noted that though Plaintiff represented to Dr. Lebowtiz that her knees were very painful, the examination did not show swelling or tenderness to palpation. (Tr. 19, 1010). Moreover, as highlighted by the ALJ, Plaintiff displayed only slightly decreased strength, no deficits in her bilateral upper extremities, and no need for an assistive device. (Tr. 21, 1010).

Throughout 2020, Plaintiff returned to Tampa Family Health for routine follow ups for diabetes and medical refills and denied having any significant complaints. (Tr. 1045-1118, 1133-1252). The ALJ noted that Plaintiff's physical examinations during this time were "essential within normal limits." (Tr. 20). The ALJ also evaluated the state agency medical consultants' opinions that Plaintiff be reduced to a light residual functional capacity and frequent to occasional stair climbing. (Tr. 22). The ALJ found these opinions generally persuasive though in his view the record suggested Plaintiff had fewer physical limitations than those found by the physical medical consultants. (Tr. 22). In reaching his conclusion, the ALJ also noted that Plaintiff's own primary care physician had refused to provide disability paperwork as Plaintiff was unable to articulate a reason for disability. (Tr. 21). Moreover, the ALJ highlighted Plaintiff's testimony that in 2019 she worked full time for 3-4 months packing up boxes of motor oil People Ready Florida, Inc. and had only recently stopped working at the Tahitian Inn in February 2022 to undergo knee surgery. (Tr. 16). The ALJ acknowledged that though Plaintiff's post onset date employment did not qualify as substantial gainful activity, it did contradict her allegations of disability and showcase her ability to work. (Tr. 16). Based on the medical evidence provided in the record, Plaintiff's work activity after the alleged onset date, and the prior administrative findings, the ALJ found that Plaintiff had the RFC to preform light work, could frequently climb ramps and stairs, and could occasionally climb ropes or scaffolds. (Tr. 22). Accordingly, this Court is persuaded the ALJ's RFC analysis is supported by substantial evidence.

Though Plaintiff argues that the ALJ relied on "outdated medical opinions" in reaching his conclusion, the ALJ properly evaluated relevant evidence. Plaintiff alleged disability beginning December 6, 2018, and the ALJ issued his decision on September 25, 2022. Thus, Plaintiff's medical records and agency opinions produced in the interim were relevant to the ALJ's analysis. Moreover, the ALJ did not error in failing to obtain another medical opinion as the record contained sufficient information to make a disability determination. Plaintiff's argument that an additional medical opinion should have been obtained is an impressible attempt to shift Plaintiff's burden of establishing disability prior to her last insured date. Though Plaintiff may disagree with the ALJ's determination, the Court will not substitute its own judgment for that of the Commissioner. *See Vaughn v. Heckler*, 727 F.2d 1040 (11th Cir. 1984); *see also Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014) (finding that the ALJ did not fail to fully and fairly develop the record by obtaining a medical opinion where Plaintiff was found to have a severe knee impairment but had undergone no treatment during the relevant period of inquiry as an ALJ may "render a commonsense judgment about functional capacity even without a physician's assessment.") (internal quotations omitted).

## IV.

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is AFFIRMED.

2.  The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 7th day of March 2024.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record